1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    LUCENT TECHNOLOGIES, INC.,          CASE NO. 06-CV-0684-H
      and MULTIMEDIA PATENT TRUST          (CAB)
12
                              Plaintiffs,   ORDER ON MOTIONS FOR
13                                          JUDGMENT AS A MATTER
             vs.                            OF LAW OR NEW TRIAL,
14                                          REGARDING UNITED
                                            STATES PATENT NUMBERS
15                                          5,227,878; 5,438,433; 6,339,794;
      MICROSOFT CORPORATION,                5,917,499; 5,977,971; AND
16                                          6,565,608;
                              Defendant.
17    ─────────────────────────────        [Doc. Nos. 861-64, 866-67, 870.]

18    AND RELATED CLAIMS

19
             This order addresses post-trial motions following a jury trial involving six United
20
      States patents: 5,227,878 ("Puri '878"); 5,438,433 ("Reifman '433"); 6,339,794
21
      ("Bolosky '794"); 5,917,499 ("Jancke '499"); 5,977,971 ("Guzak '971"); 6,565,608
22
      ("Fein '608").  Multimedia Patent Trust ("MPT"), a Delaware trust with Lucent
23
      Technologies Inc. ("Lucent") as the primary beneficiary, asserted the Puri '878 patent
24
      against Microsoft Corporation ("Microsoft").  Microsoft brought counterclaims against
25
      Lucent and its parent company, Alcatel Lucent.  At trial, Microsoft asserted the Reifman
26
      '433, Bolosky '794, and Jancke '499 patents against Lucent only.  Microsoft asserted
27
      the Guzak '971 and Fein '608 patents against both Lucent and Alcatel Lucent.
28
             The parties filed their initial briefs on these matters on June 27, 2008.  MPT filed

a motion for judgment as a matter of law ("JMOL") or new trial regarding the Puri '878 patent. (Doc. No. 867.) Regarding the Puri '878 patent, Microsoft filed a conditional motion for JMOL of invalidity in the event that the Court disturbs the jury's finding of no infringement. (Doc. No. 862.) Microsoft also filed motions for JMOL or new trial regarding the Reifman '433, Bolosky '794, and Guzak '971 patents. (Doc. Nos. 863-64, 870). Lucent and Alcatel Lucent each filed motions for JMOL or new trial regarding the Guzak '971 and Fein '608 patents, including conditional motions regarding infringement of the Guzak '971 patent should the Court disturb the jury's finding on validity. (Doc. Nos. 861, 866.)[1]

The parties filed their responsive briefing on July 11, 2008 and their reply briefs on July 18, 2008. (See Doc. Nos. 882-86, 893-94, 898, 900-03, 906-08.) The Court held a hearing on these motions on July 25, 2008. The Court concludes that these motions are suitable for decision without oral argument and submits them on the papers pursuant to its discretion under Local Civil Rule 7.1(d)(1).

<u>Background</u>

**I.    Overview of the Verdict**

The jury returned a special verdict on June 4, 2008, that did not award any infringement damages to either side. (Doc. No. 851.) With the exception of the Guzak '971 patent, the jury found no infringement. With the Guzak '971 patent, the jury found infringement by both Lucent and Alcatel Lucent, but it also found the asserted claims invalid due to anticipation and obviousness. The jury did not find any of the other patents invalid.

**II.    Puri '878**

The Patent and Trademark Office ("PTO") issued the Puri '878 patent, entitled "Adaptive Coding and Decoding of Frames and Fields of Video," on July 13, 1993, based on an application filed November 15, 1991. Puri '878 relates generally to the compression and decompression of video signals, which reduce the amount of

---

[1]None of the parties' post-trial motions addressed the Jancke '499 patent.

1  transmission bandwidth and storage space needed.

2         Two apparatus claims are at issue here: claim 13 and related dependent claim 15.

3  The PTO issued a certificate of correction regarding claim 13 on October 25, 2005.[2]

4  Claim 13 states, in its corrected form:

5         An apparatus for decoding a compressed digital video signal, comprising:

6         a means for receiving a compressed digital video bit stream; and

7         a means responsive to a motion compensation type signal for selectively
        and adaptively performing motion compensated decoding of frames of the
8         compressed digital video bit stream and fields of the compressed video bit
        stream.

9
   Claim 15 states:
10
        The apparatus of claim 13, in which the decoding means comprises:
11
        a means responsive to a motion compensation type signal and selectively
12        responsive to frame motion vectors and field motion vectors for producing
        an adaptive motion compensated estimate of a decoded video signal; and
13
        a means responsive to the compressed digital video bit stream for
14        producing a decoded estimate error signal; and

15        a means responsive to the adaptive motion compensated estimate and the
        estimate error signal for producing a decoded video signal.
16
        MPT accused Microsoft of infringement based on various products containing
17
   MPEG-2 or VC-1 video decoders.[3]   MPEG-2 and VC-1 are standards for video
18
   compression used in a variety of contexts, including DVDs and HD DVDs.   The
19
   accused MPEG-2 products include the Windows Vista operating system and the Xbox
20
   360 video game console.   The accused VC-1 products include the Windows Vista
21
   operating system, the Xbox 360 video game console, Windows Media Player versions
22
   10 and 11, Windows Server 2003, Office Communicator, Windows Mobile, and
23

24         [2]The PTO, due to its own error, initially issued claim 13 without the phrase "and fields of the
   compressed video bit stream" and without the word "digital" in the second means plus function
25   limitation.  Lucent previously asserted the Puri '878 patent in a suit against Microsoft without first
   seeking a correction.  There, the Court declined to correct the patent and determined that claims 13 and
26   15 were invalid due to indefiniteness.  (Order Granting Part Denying Part Mot. Summ. J. Claims of
   Puri '878 Invalid Under § 112(2), Case No. 02-CV-2060, Doc. No. 325.)  Lucent later obtained a
27   certificate of correction from the PTO, pursuant to 35 U.S.C. § 254, which permits the Director to
   issue a certificate "[w]henever a mistake in a patent incurred through the fault of the Patent and
28   Trademark Office, is clearly disclosed by the records of the Office . . . ."

        [3]VC-1 is also referred to in the record as WMV-9.

1    Windows CE.

2          The jury did not find infringement by any of the accused products.  Microsoft

3    raised an obviousness defense for both claims, and the jury did not find either claim

4    invalid for obviousness.

5    **III.   Reifman '433**

6          The PTO issued the Reifman '433 patent, entitled "System and Method for

7    Facsimile Cover Page Storage and Use," on August 1, 1995, based on an application

8    filed March 31, 1994.  Only method claim 1 is at issue here.  It states:

9          A method in a facsimile machine having a display and a user input device,
            for storage and use of a facsimile cover page, the method comprising the
10         steps of:

11         maintaining at least one facsimile cover page in a first storage location
            continuously accessible by any of a plurality of users of the facsimile
12         machine;

13         maintaining at least another facsimile cover page in a second storage
            location accessible by a selected on of said plurality of users, said selected
14         user having a corresponding user identification;

15         sensing if a user inputs a user identification; and

16         enabling access to said, second storage location only if said sensed user
            identification corresponds to said user identification of said selected user,
17         said first storage area being continuously enabled for any of said plurality
            of users and said second storage area being enabled only when said sensed
18         user identification corresponds to said user identification of said selected
            user.

19
     Microsoft claimed that Lucent infringed claim 1 through use of its AnyPath Messaging
20
     System ("APMS").  The jury held that Lucent had not infringed claim 1 of the Reifman
21
     '433 patent.  No affirmative defenses regarding the Reifman '433 patent went before
22
     the jury.
23
     **IV.   Bolosky '794**
24
           The PTO issued the Bolosky '794 patent, entitled "Wire Protocol for a Media
25
     Server System," to inventors William J. Bolosky et al. based on an application filed
26
     December 8, 1995.  The patent describes a protocol for establishing connections
27
     between a media server and a client. Microsoft claimed that Lucent's APMS infringes
28
     claim 33, which states:

In a distributed system having a media server storing files holding data of multiple media, a computer system comprising:

a control connection generator for creating a bidirectional control connection between the media server and the computer system to enable control information to be passed between the media server and the computer system, the control connection utilizing a first transport protocol; and

a data connection generator for creating a bidirectional data connection between the media server and the computer system to enable data to be passed between the media server and the computer system, the data connection using a second transport protocol distinct from the first transport protocol.

The jury held that Lucent had not infringed claim 33 of the Bolosky '794 patent.  No affirmative defenses regarding the Bolosky '794 patent went before the jury.

## V.    Guzak '971

The PTO issued the Guzak '971 patent, entitled "Tree View Control," to inventors Christopher J. Guzak, et al., on Nov. 2, 1999.  The patent describes a computer user interface element, called a tree view control, that enables application programs to display hierarchical lists of items.  Microsoft claimed that three products infringed claims 2 and 3 of the Guzak '971 patent: Lucent's Vital Suite product, Alcatel Lucent's OmniVista 2500/2700 Software, and Alcatel Lucent's 1300 Convergent Network Management Center.  Claim 3 states:

A computer-readable medium having computer-executable instructions, which when executed in a computer system having an output device and an input device, performs a method comprising:

displaying a hierarchical tree of items having at least two levels of items on the output device as part of a child window control;

in response to a user using the input device, selecting one of the items displayed in the hierarchical tree of items; and

collapsing the hierarchical tree of items independently of the selecting so that one of the levels of items of the hierarchical tree that was displayed in the displaying step is no longer displayed as part of the hierarchical tree on the output device in response to a user action that does not result on [sic] a selection of one of the items.

For the most part, Claim 2 is the same, but it involves "expanding" rather than "collapsing."

The jury found that Lucent and Alcatel Lucent had infringed both claims, with

respect to all three products at issue.  The jury also found, however, that the claims were invalid due to anticipation and obviousness.

## VI.   Fein '608

The PTO issued the Fein '608 patent, entitled "Method and System for Customizing Alert Messages," to inventors Ronald Fein, et al., on May 20, 2003.  The application was filed on December 16, 1998.  The patent relates to the use of alert messages in computer systems.  Microsoft claimed infringement of method claim 25 by Lucent's Vital Suite product and Alcatel Lucent's Air Control System.  Claim 25 states:

> A computer-implemented method for providing custom content that supplements static content displayed in an alert message for a software program module running on a local machine, comprising the steps of:
>
> detecting one of a plurality of predetermined conditions;
>
> displaying the alert message in response to the detected predetermined condition;
>
> opening a hyperlink from the alert message to access an external information source that maintains the custom content, the external information source operating in a location separate from the local machine;
>
> displaying the custom content to present supplemental information that is related to the detected predetermined condition.

The jury found no infringement by either Lucent or Alcatel Lucent.  The jury also found that claim 25 of the '608 patent was not invalid due to obviousness.

## Discussion

## I.   Standards for JMOL and New Trial

In patent cases, the standards on motions for judgment as a matter of law or new trial are questions of regional circuit law.  Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1328 (Fed. Cir. 2008).  Judgment as a matter of law is available where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  A party may renew the motion when not granted at trial.  Fed. R. Civ. P. 50(b).  A court must uphold the jury's verdict if it is supported by substantial evidence.  Wallace v. City of San Diego, 479 F.3d 616, 624

(9th Cir. 2007).  "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." Id. (quoting Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).  Substantial evidence requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blanton v. Anzalone, 813 F.2d 1574, 1576 (9th Cir. 1987) (quoting Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir. 1985)).  The court must not weigh the evidence and must "disregard all evidence favorable to the moving party that they jury is not required to believe." Wallace, 479 F.3d at 624.  Furthermore, the court draws all reasonable inferences in favor of the nonmoving party.  Id.  Judgment as a matter of law is appropriate only if, once the court has applied this standard, it concludes that the evidence permits only one reasonable conclusion that is contrary to the jury's verdict.  Id.

A party may also move for a new trial when requesting judgment as a matter of law following a jury trial.  Fed. R. Civ. P. 50(b), 59.  Whether to grant a new trial is a matter of the trial court's discretion.  City Solutions, Inc. v. Clear Channel Communications, 365 F.3d 835, 843 (9th Cir. 2004).  The court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999) (quoting Oltz v. St. Peter's Cmty. Hosp., 861 F.2d 1440, 1452 (9th Cir. 1988)).  To make a "clear weight of the evidence" determination, the court weighs the evidence as the court saw it.  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990)).

## II.    Puri '878

### A.    Claim Construction and Allegedly Improper Argument

MPT argues that Microsoft's noninfringement theories focused on two elements that should have been excluded from the corresponding structure for the second means-plus-function element of claim 13: Block Type Declassifier 80 and Motion Vector

1   Predictor 94.  The Court identified the function for this element as "selectively and

2   adaptively performing motion compensated decoding of frames of the compressed

3   digital video bit stream and fields of the compressed video bit stream," and MPT does

4   not challenge this.  (See Jury Instruction 14, Ex. A.)  Instead, MPT argues that the

5   disputed elements are not required to perform the claimed function.  The Court

6   concludes that it appropriately included elements 80 and 94 in the claim construction.

7       The corresponding structure of a means-plus-function element "must include all

8   structure that actually performs the recited function," though it "need not include all

9   things necessary to enable the claimed invention to work."  Cardiac Pacemakers, Inc.

10  v. St. Jude Med., Inc., 296 F.3d 1106, 1119 (Fed. Cir. 2002).  Corresponding structure

11  must be "necessary to perform the claimed function."  Omega Eng'g, Inc. v. Raytek

12  Corp., 334 F.3d 1314, 1321 (Fed. Cir. 2003).  "Features that do not perform the recited

13  function do not constitute corresponding structure and thus do not serve as claim

14  limitations."  Northrop Grumman Corp. v. Intel Corp., 325 F.3d 1346, 1352 (Fed.

15  Cir. 2003).

16      MPT argues that Block Type Declassifier 80 is irrelevant to the claimed function

17  involving "motion compensated decoding" because it merely parses an incoming bit

18  stream into separate control signals.  The Court disagrees.  Unpacking the various

19  control signals in the incoming bit stream is a necessary part of the disclosed approach

20  to motion compensated decoding of a video signal.  Block Type Declassifier 80

21  performs part of that process along with other components such as Decoder and

22  Demultiplexer 54.  (See, e.g., '878 15:1-10.)  Without the declassifier, necessary

23  information about the motion compensation mode would not be extracted from the

24  incoming bit stream and made available to the other components.[4]

25

26      [4]MPT also argues that Block Type Declassifier 80 should be excluded because it is not
    "responsive to a motion compensation type signal."  In the Court's view, however, Block Type
27  Declassifier 80 is responsive to a motion compensation type signal.  The motion compensation type
    signal originates in the encoder and is incorporated into the combined signal sent to Block Type
28  Declassifier 80.  (See, e.g., '878 Fig. 1A, 12:60-64 (indicating that a motion compensation type signal
    is one of the inputs to Block Type Classifier 44 in the disclosed encoder).)  The Court construed
    "motion compensation type signal" as "a signal that identifies one of two or more available modes of

The Court also concludes that Motion Vector Predictor 94 is part of the corresponding structure for the second means-plus-function element of claim 13. MPT argues that the generation of motion vectors is not part of the claimed function of motion compensated decoding.  To the contrary, the Court sees this is a vital component of the claimed function.  Without Motion Vector Predictor 94, the only motion vector information reaching estimation circuit 100 would be the differential motion vector signal at line 90.  (See, e.g., '878 Fig. 2, 15:11-28.)  The differential motion vectors are merely one part of the information necessary to construct the motion vectors used in the disclosed form of motion compensated decoding.  Standing alone, the differential motion vector signal does not represent actual motion, and relying only of this one piece would not result in decoding that could reasonably be considered "motion compensated."  Also, there can be no doubt that Motion Vector Predictor 94 is "responsive to a motion compensation type signal" since the patent makes this point explicitly.  (See '878 15:17-22.)  Microsoft raised a number of other arguments supporting the Court's claim construction, but the Court declines to reach them.  The reasons stated here are sufficient to reject MPT's arguments.

Additionally, MPT argues that it should receive a new trial because Microsoft made improper "component-by-component" arguments that a product must have a block type declassifier and motion vector predictor, rather than treating the corresponding structure as a whole.  See, e.g., Odetics, Inc. v. Storage Tech. Corp, 185 F.3d 1259, 1268 (Fed. Cir. 1999) ("The individual components, if any, of an overall structure . . . are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function.")  The Court properly instructed the jury that the corresponding structure of a means-plus-function element is viewed as a

---

motion compensation to be used in motion compensated decoding of a video signal." This definition does not exclude a combined signal that conveys the motion compensation mode along with other information. Microsoft did not advocate this approach, presumably because one of its noninfringement arguments treats the bit stream, block class signal, and motion compensation type signal as completely separate entities. In the Court's view, the motion compensation type signal remains part of the higher level signals, though it must be extracted by appropriate circuitry before other components can make use of it.

whole.  (See Jury Instruction 20 ("Determination of structural equivalence does not require a component-by-component analysis . . . Rather, you should consider whether the structure in the accused product for performing the function is equivalent to the overall structure . . . identified in the claim construction.").)  MPT also had a sufficient opportunity to respond to Microsoft's arguments and point out the Court's instruction on the law.  Viewing the totality of the record, the Court declines to grant a new trial.

### B.   Alleged Infringement by the MPEG-2 Products

Microsoft introduced evidence sufficient for the jury to reasonably conclude that Microsoft's accused MPEG-2 products did not infringe claim 13.  In particular, Microsoft introduced substantial evidence that its MPEG-2 products do not have structure identical or equivalent to the corresponding structure for the second means-plus-function element.[5]

Literal infringement of a means-plus-function claim "requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification."  Odetics, Inc., 185 F.3d at 1267.  "[T]he claim limitation is the overall structure corresponding to the claimed function."  Id. at 1268.  An accused structure is equivalent if it "performs the claimed function in substantially the same way to achieve substantially the same result."  Id. at 1267.  "The proper test is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."  Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1309 (Fed. Cir. 1998).[6]

The accused MPEG-2 products use a decoder based on source code that Microsoft acquired from Intervideo.  Microsoft introduced substantial evidence of differences between Motion Vector Predictor 94 and corresponding portions of the

---

[5]Microsoft's opposition to MPT's Puri '878 JMOL motion did not dispute that the Intervideo decoder performs the function of the second means-plus-function element.

[6]Regarding the Puri '878 patent, the Court also instructed the jury regarding the doctrine of equivalents.  (See Jury Instructions 20-21.)  The parties present briefs do not address doctrine of equivalents theories.

Intervideo decoder, from which the jury could have reasonably concluded that the Intervideo decoder did not contain identical or equivalent structure, viewing the claim element as a whole.

Microsoft's expert, Dr. Gibson, testified to several differences between the Intervideo decoder and Motion Vector Predictor 94.   The Intervideo decoder determines predicted motion vectors from different blocks than those used in the claim.[7]   When predicting a motion vector, the Intervideo decoder only looks to the immediately preceding block, and this does not change in response to a motion compensation type signal.  (See, e.g., Trial Tr. XII 83:18-23 (Dr. Gibson); see also Trial Tr. XVI 200:21-24 (Microsoft's expert Dr. Girod agreeing that, in general, MPEG-2 determines the reference motion vector by looking at the immediately previous block).)  In contrast, the disclosed motion vector predictor selects from a number of possible blocks based on the motion compensation type signal, not necessarily the immediately preceding block.  (See, e.g., Trial Tr. XII 84:11-23 (Dr. Gibson); see also Trial Tr. XVI 140:11-141:23 (Dr. Girod).)  Dr. Gibson opined that since the Puri '878 patent's motion vector predictor is not constrained to the immediately preceding block, it results in less effective motion compensation.  (See, e.g., Trial Tr. XII 84:11-85:9.)  Based on Dr. Gibson's testimony, along with all the evidence presented, the jury could have reasonably concluded that Intervideo decoder did not "function in substantially the same way to achieve substantially the same result."  Odetics, Inc., 185 F.3d at 1267.

MPT raises challenges to Dr. Gibson's credibility, but none of them rise to a level sufficient to grant JMOL or a new trial.  The competing expert's opinions presented a factual question, and the jury could have reasonably accepted one expert's views while rejecting the other.  Generally, the Court was more persuaded by MPT's expert, Dr. Girod, but not to an extent sufficient to overcome the deference afforded to

---

[7]Here, "blocks" are subdivisions of a single frame or field of video, such as an 8x8 square of pixels.  The parties also refer to "decision blocks," which describes subsections of Motion Vector Predictor 94's internal circuitry that determine the approach to motion vector prediction in response to the motion compensation type signal.  (See '878 Figs. 15-16.)

the jury's verdict.

Microsoft raised a number of other theories to support the jury's noninfringement finding, but the Court does not reach them since the differences involving the motion vector predictor provide sufficient reasons to uphold the noninfringement verdict. For example, Microsoft also argued that: (1) the Intervideo decoder does not have identical or equivalent structure in light of Block Class Declassifier 80;[8] (2) MPT failed to provide sufficient evidence of indirect infringement; and (3) MPT failed to provide sufficient evidence of infringement by downloads of Windows Media Player.

The Court has also weighed the evidence regarding the MPEG-2 products as the Court saw it and concluded that the verdict is not against the clear weight of the evidence. Finally, the Court's discussion of the MPEG-2 products applies equally to dependent claim 15, which incorporates all the limitations of claim 13.

## C.    Alleged Infringement by the VC-1 Products

As with the MPEG-2 products, Microsoft argues that its VC-1 decoders do not have structure identical or equivalent to that in the second means-plus-function element of claim 13. Microsoft introduced substantial evidence regarding the VC-1 approach to motion vector prediction from which the jury could reasonably conclude that the VC-1 decoders did not have identical or equivalent structure. The motion vector predictor in the patent chooses from several possible approaches based on the motion compensation type signal. (See, e.g., Trial Tr. XII 84:11-23 (Dr. Gibson); see also Trial Tr. XVI 140:11-141:23 (Dr. Girod).) In contrast, the VC-1 decoders look at the average or median of three surrounding blocks, whose locations are predefined and do not change in response to a motion compensation type signal. (See, e.g., Trial Tr. XII 82:17-83:17 (Dr. Gibson); see also Trial Tr. XVI 152:2-13 (Dr. Girod).) Dr. Gibson opined that the VC-1 approach results in better motion compensation that the Puri '878 patent. (See, e.g., Trial Tr. 84:6-85:9.) The details of VC-1 implementation are

---

[8]Microsoft distinguishes claim 13 from the Intervideo decoder, claiming that the former extracts the motion compensation type signal from the block class signal, while the later extracts control signals directly from the incoming bit stream. This may also be a sufficient basis to uphold the jury's verdict.

06cv684

1  different than MPEG-2, but the Court reaches the same conclusion.  The evidence was

2  sufficient for the jury to reasonably conclude that the VC-1 decoders did not include

3  identical or equivalent structure.

4      As with the MPEG-2 decoders, Microsoft raised a number of other theories that

5  the Court declines to reach.  For example, Microsoft also argued that: (1) VC-1

6  decoders do not have identical or equivalent structure in light of Block Class

7  Declassifier 80 and Motion Compensated Prediction Selector 100; (2) MPT failed to

8  provide sufficient evidence of indirect infringement; (3) MPT failed to provide

9  sufficient evidence of infringement by downloads of Windows Media Player; and (4)

10  with respect to claim 15, the structure of VC-1 decoders is substantially different

11  because they use a set of 16-bit integer transforms rather than an inverse discrete cosine

12  transform.[9]

13      The Court has also weighed the evidence regarding the VC-1 products as the

14  Court saw it and concluded that the verdict is not against the clear weight of the

15  evidence.  Moreover, the Court's discussion of the VC-1 products applies equally to

16  dependent claim 15, which incorporates all the limitations of claim 13.

17      **D.**    **Summary**

18      In summary, the Court does not disturb any aspect of its claim construction or

19  the jury's verdict regarding the '878 patent.  The Court denies MPT's motion for

20  judgment as a matter of law or a new trial.  Since the Court upholds the jury's finding

21  of no infringement, the Court denies Microsoft's conditional motion regarding the

22  validity of the '878 patent as moot.

23  / / /

24  / / /

25

26      [9]This argument is very similar to one made by Microsoft in related case 07-CV-2000.  There,

27  the Court concluded that evidence of differences between the discrete cosine transform and the integer transforms in VC-1 was sufficient for the jury to reasonably conclude that two decoder structures were not equivalent.  (See Order Regarding Post-Trial Matters, Case No. 07-CV-2000, Doc. No. 852 at

28  37-38.)  Under a similar rationale, the evidence here is likely adequate to support the jury's verdict, at least as to claim 15, but the Court does not reach this issue since there are other grounds sufficient for upholding the verdict.

06cv684

### III.   Reifman '433

Microsoft moves for judgment as a matter of law that Lucent's AnyPath Messaging System ("APMS") infringes claim 1 of the Reifman '433 patent, or alternatively for a new trial on this issue.  The Court concludes that Lucent introduced substantial evidence from which the jury could have reasonably concluded that the APMS does not infringe claim 1.

Lucent introduced substantial evidence that the APMS does not meet language in  claim 1 requiring that the first storage area for a facsimile ("FAX") cover page be "continuously accessible by any of a plurality of users" and "continuously enabled for any of said plurality of users." (See Jury Instruction 14, Ex. B.)  In contrast, the second storage area is "enabled only when said sensed user identification corresponds to said user identification of said selected user." (Id.)  The Court construed "continuously" to mean "without interruption." (Id.)  Lucent offered the opinion of its expert, Dr. Tobagi, that a subscriber to the APMS system has no access to any FAX capabilities before signing in, and Microsoft does not dispute this.  (See, e.g., Trial Tr. XV 137:3-16.)  Therefore, Dr. Tobagi opined, APMS does not involve a "first storage area" that meets the "continuously accessible" and "continuously enabled" requirements of claim 1. (See, e.g., Trial Tr. XV 189:4-190:11.)  Dr. Tobagi's opinion is consistent with the claim language and the Court's claim construction.  The claim language distinguishes the first storage location from the second storage location's requirement of user identification.  In light of all the evidence, the jury could have reasonably accepted Dr. Tobagi's opinion and concluded that the APMS does not provide a FAX cover page that is "continuously accessible" or "continuously enabled" within the meaning of claim 1.

Accordingly, the Court denies Microsoft's motion for JMOL of infringement regarding the Reifman '433 patent.  Furthermore, the Court concludes that the verdict was not against the clear weight of the evidence.  Since the above reasons are sufficient to uphold the verdict of no infringement, the Court does not reach Lucent's other arguments.  For example, Lucent also argued that: (1) Microsoft failed to prove that the

06cv684

APMS includes a "display" or "user input device," and (2) Microsoft failed to prove that Lucent engaged in conduct constituting direct or indirect infringement.[10]

**IV.   Bolosky '794**

Microsoft seeks JMOL of inducement based on Lucent's alleged encouragement of customers to deploy the APMS system to provide Voice over Internet Protocol ("VoIP") services in combination with VoIP phones or similar devices.[11]   Microsoft argues that Lucent's expert, Dr. Tobagi, conceded direct infringement, which is a necessary element of an inducement claim.  See, e.g., Symantec Corp. v. Computer Assocs. Int'l, Inc., 522 F.3d 1279, 1292 (Fed. Cir. 2008).  After viewing the testimony and reviewing the record, the Court concludes that Dr. Tobagi did not concede direct infringement.  For example, Dr. Tobagi did agree that the VoIP server may use two transport protocols under certain circumstances, but this falls short of conceding that a system has both control and data connection generators "for creating a bidirectional control connection between the media server and the computer system."  (See, e.g., Trial Tr. XV 148:10-149:14 (Dr. Tobagi agreeing on cross-examination that the APMS VoIP server may use both UDP and TCP protocols, in some situations).)

Microsoft also argues that Dr. Tobagi never denied the existence of the required control and data connection generators.  Lucent was not required to do so.  The burden of persuasion was with Microsoft.  Though Microsoft offered some evidence of control and data connections, Lucent countered that Microsoft did not offer any analysis identifying the generators involved, whether in the APMS VoIP server or in VoIP devices connected to it.  The jury could have reasonably concluded that Microsoft failed to meet its burden of proof for direct infringement.

Lucent also argued that there is substantial evidence from which the jury could have concluded that Lucent lacked the intent necessary for inducement.  The Court

---

[10]The Court notes that it was not persuaded that the alleged lack of a "display" and "user input device" would be an appropriate basis to sustain the verdict.

[11]The APMS includes a variety of individual network elements that may be configured in a variety of ways to meet a particular customer's needs.

declines to reach this issue, having concluded that the evidence supports a finding of no direct infringement.  The Court also concludes that the jury's verdict is not against the clear weight of the evidence.

**V.   Guzak '971**

   **A.   Validity**

Microsoft moves for judgment as a matter of law that the Guzak '971 patent is not invalid due to anticipation, or for a new trial on this issue.  The anticipation defense, based on 35 U.S.C. § 102, requires clear and convincing evidence that a single piece of prior-art contains all limitations of a claim.  See, e.g., Glaxo Group Ltd. v. Apotex, Inc., 376 F.3d 1339, 1348 (Fed. Cir. 2004); Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1188-89 (Fed. Cir. 2002).  The Court concludes that substantial evidence supports the jury's verdict that both claims 2 and 3 of the Guzak '971 patent were anticipated.

The disputed claims describe computer-readable media containing executable instructions that, when executed, perform methods involving the expansion and collapse of a hierarchical tree, independently of selecting an item within the tree.  The tree is displayed in a "window control."   The Court construed "window control" as "computer code, along with an accompanying graphical representation, that sends notification messages to a parent window when events, like user input, occur within the window control."  (Jury Instruction 14, Ex. F.)   For the present purposes, many elements of anticipation are undisputed, and resolution of this motion turns on whether Lucent and Alcatel Lucent offered substantial evidence that XTree for Windows ("XTree") includes the use of "notification messages," thus meeting the Court's construction of "window control."  Microsoft's motion does not dispute that the other elements of claims 2 and 3 are part of XTree.

Lucent and Alcatel Lucent offered substantial evidence that XTree for Windows includes notification messages.  Their expert, Dr. Polish, offered his opinion that XTree includes a "Tree Window" that is a child window residing within the current "Application Window." (See, e.g., Trial Tr. XV 29:17-30:24.)  Mr. Bogdan, one of the

named inventors for the Guzak '971 patent, provided an explanation of the role of child and parent windows consistent with Dr. Polish's testimony.    (Trial Tr. VI 216:9-217:12.) Dr. Polish further testified that certain actions within the Tree Window lead to the near-immediate update of information in the Application Window. (See, e.g., Trial Tr. at XV 31:2-25.)    Therefore, he opined, the code must be sending notification messages from the child window to the parent window. (See id.) The jury could have reasonably accepted Dr. Polish's view, along with the other evidence of XTree's behavior, and concluded that there was clear and convincing evidence that XTree includes notification messages.    The verdict is not flawed, as Microsoft contends, because Dr. Polish did not offer a code analysis identifying notification messages.  The jury could have reasonably accepted Dr. Polish's expert opinion that the existence of notification messages was a necessary implication of XTree's behavior.

Microsoft also moves for judgment as a matter of law that the Guzak '971 patent is not invalid due to obviousness. Since anticipation is the "epitome of obviousness," its follows from the Court's conclusion on anticipation that the jury's obviousness verdict is also supported by substantial evidence.  TorPharm, Inc. v. Ranbaxy Pharms., Inc., 336 F.3d 1322, 1326 (Fed. Cir. 2003) (quoting Connell v. Sears, Roebuck, & Co., 722 F.2d 1542, 1548 (Fed. Cir. 1983)).  The Court denies Microsoft's request for judgment as a matter of law that the Guzak '971 patent is not invalid.  Furthermore, the Court has weighed the evidence on these invalidity defenses and concluded that a new trial is not appropriate on this issue.  Since the Court upholds the jury's verdict of invalidity, the Court declines to reach Lucent and Alcatel Lucent's conditional motions regarding infringement of the Guzak '971 patent.

## B.    Alcatel Lucent's OmniStack 6300

Alcatel Lucent argues that Microsoft included its OmniStack 6300 product in the infringement contentions for the pretrial order, but did not present any infringement evidence regarding this product at trial.  No issues regarding the OmniStack 6300 reached the jury.  Microsoft did not oppose this motion, and the Court concludes that there is good cause to grant Alcatel Lucent's motion that, as a matter of law, it does not

infringe claims 2 and 3 of the Guzak patent, with respect to the OmniStack 6300.

## VI.    Fein '608

### A.    Indefiniteness

Lucent moves for judgment as a matter of law that claim 25 of the Fein '608 patent is invalid due to indefiniteness.  Microsoft does not dispute that claim 25 of the patent contains a printing error.  The applicants amended claim 25, changing "opening a hyperlink" to "selecting a control object," and the PTO approved the patent with this amendment.  (PX 13 (Fein '608 file history), Amendment and Response to September 30, 2002 Office Action at 9.)  Nevertheless, the PTO issued the patent without the change.  Microsoft asserted claim 25 as issued, without any correction.

However, Lucent and Alcatel Lucent did not raise this issue in the pre-trial order, which acts as an amended pleading that controls the subsequent course of litigation. See, e.g., Northwest Acceptance Corp. v Lynnwood Equip., Inc., 841 F.2d 918, 924 (9th Cir. 1988).  To the extent that the Court has discretion to consider the merits of this matter now, it declines to do so.  Lucent and Alcatel Lucent had adequate opportunities to raise this issue at an appropriate stage of these proceedings, such as claim construction or summary judgment.  As Lucent and Alcatel Lucent did not properly preserve this issue, the Court denies their motion that claim 25 is invalid due to indefiniteness.

### B.    Obviousness

Lucent and Alcatel Lucent move for judgment as a matter of law that the Fein '608 patent is invalid for obviousness, or for a new trial on this issue.  The Court concludes that Microsoft introduced substantial evidence from which the jury could reasonably conclude that the patent was not invalid due to obviousness.  Though the ultimate determination of obviousness is a question of law, courts give deference to the jury's underlying findings of fact.  See Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1338 (Fed. Cir. 2008) ("[T]his court reviews a jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence.") (quoting

Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337, 1343 (Fed. Cir. 2007)).  These underlying findings include "the scope and content of the prior art, the differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art . . . ."  Id. at 1338-39.  Here, there were material factual disputes about the content of the prior art, and there is evidence sufficient to support the jury's verdict.

The obviousness defense requires proof by clear and convincing evidence.  Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd., 492 F.3d 1350, 1355 (Fed. Cir. 2007).  When considering this defense, courts should determine whether the "objective reach of the claim" encompasses obvious subject matter.  KSR Int'l Co. v. Teleflex Inc., 550 U.S. ___, 127 S.Ct. 1727, 1741-42 (2007).  This may include "noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims."  Id.

Lucent and Alcatel Lucent rely on the combination of two references: United States Patent No. 5,845,120 ("Reddy"), and the article "Help File Web Links" by Robert Lord ("Lord").  (PX 1121 (Reddy); PX 1122 (Lord).)  The parties' dispute centers on whether the Reddy patent discloses "custom content," as used in claim 25.  Microsoft offered the opinion of its expert, Dr. Porter, who testified that Reddy does not disclose custom content.  (See, e.g., Trial Tr. VIII 73:4-16.)  He explained, for example, that Reddy discloses a compiler that does not customize anything for specific users, while "custom content" in the context of the Fein '608 patent is something that provides supplemental information for particular users.  (See, e.g., id.; Trial Tr. VIII 45:23-46:4 (explaining "custom content" in the Fein '608 context).)  This view of custom content is consistent with the Court's claim construction, which did not construe "custom content" beyond its ordinary meaning.  The jury could have reasonably accepted Dr. Porter's opinion, particularly given the burden of clear and convincing evidence that applies to this defense in litigation.

The fact that the examiner viewed Reddy as disclosing "custom content" does not require a different result.  When initially rejecting claim 25, the examiner stated that "[t]he content of Reddy et al. meets the '*broadest reasonable interpretation*' of

custom content because it MUST have been authored, at least in part, *for the particular application being used*." (PX 13, Office Action of September 30, 2002 at 11 (emphasis in original).)   The applicants avoided the obviousness rejection by asserting a conception date earlier than another piece of prior art with which the examiner had combined Reddy.   The "broadest reasonable interpretation" standard used by the examiner is not applicable in the context of litigation.  See Atlantic Thermoplastics Co., Inc. v. Faytex Corp., 970 F.2d 834, 846 (Fed. Cir. 1992).  Dr. Porter offered his opinion that "custom content" in the Fein '608 context requires something customized for users, not just a particular application.  (See, e.g., Trial Tr. VIII 45:23-46:4.)   Under the standards appropriate to litigation, Microsoft offered substantial evidence from which the jury could have reasonably rejected the obviousness theory offered by Lucent and Alcatel Lucent.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**<u>Conclusion</u>**

For the reasons set forth above, the Court GRANTS Alcatel Lucent's unopposed motion for judgment as a matter of law that its OmniStack 6300 product does not infringe claims 2 and 3 of the Guzak '971 patent.  The Court DENIES all other pending motions for judgment as a matter of law or new trial.

As in related case 07-CV-2000, the Court again compliments all attorneys involved for their excellent work in this matter.  (<u>See</u> Order on Post-Trial Matters, Case No. 07-CV-2000, Doc. No. 852 at 56 ("Counsel for all parties worked diligently to accommodate the Court's schedule, prepared their materials thoroughly, and conducted themselves in a professional and courteous manner that does credit to their profession.").)  That commendation applies equally here.  Furthermore, the Court notes that a number of the attorneys had limited time between this trial and the related patent trial in 07-CV-2000.  By preparing for these trials in rapid succession, the parties helped the Court to manage its calendar efficiently.[12]

IT IS SO ORDERED.

Dated: July 23, 2008

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.

---

[12]If there are any other pending motions, the Court denies them at this time.

06cv684